**UNITED STATES of America**

v.

**Randolph BENNETT, Jr.; John W. Booker; and Dwight L. Lawson.**

No. F CR 88–30.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

July 13, 1989.

---

**3.** While equitable tolling may apply prior to August 1984, the court need not address that

issue to resolve this motion.

David H. Miller, Asst. U.S. Atty., Fort Wayne, Ind., for the U.S.

Linda M. Wagoner, Myers & Wagoner, Fort Wayne, Ind., for Randolph Bennett, Jr.

John S. Nimmo, Grimm, Haecker & Nimmo, Fort Wayne, Ind., for John W. Booker.

Randall J. Hammond, Tremper, Bechert, Leonard & Terrill, Fort Wayne, Ind., for Dwight L. Lawson.

ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on defendants' objections to imposition of the sentences recommended by the United States Probation Office. A sentencing hearing was held by this court on March 8, 1989. Briefs were filed by the defendants on May 1, 1989 and the government filed a response brief on June 2, 1989. This court held a second hearing on the issues raised by the briefs on June 27, 1989.

*Factual Background*

The defendants, Randolph Bennett, Jr. (Bennett), John W. Booker (Booker) and Dwight L. Lawson (Lawson) were charged by indictment with knowingly, intentionally and unlawfully distributing less than five grams of crack, in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1). On October 17, 1988, all three defendants entered pleas of guilty pursuant to plea agreements entered into with the government. Each plea agreement included a stipulation for purposes of applying the Guidelines promulgated by the United States Sentencing Commission pursuant to 28 U.S.C. § 994.

The agreement and stipulation between Bennett and his attorney and the government provided that:

(a) The amount of cocaine-crack involved was six "rocks" weighing approximately .4 grams or 400 milligrams: therefore, under Guideline 2D1.1, the adjusted offense level is level 14.

(b) In recognition of the defendant's acceptance of responsibility for his conduct in connection with this offense, the defendant is entitled to a two-level reduction in the offense level under Guideline § 3E1.1.

(c) On April 15, 1982, the defendant was convicted in CR 81–558 of battery and received a sentence of 2 years and costs. Pursuant to Sentencing Reform Act and applicable guidelines § 4A1.1(a), the defendant is assessed 3 points.

(d) That on June 26, 1984, the defendant was convicted of disorderly conduct and fined $25 in costs and that pursuant

to the Sentencing Reform Act and applicable guidelines § 4A1.1(c), the defendant is assessed 1 point.

(e) On March 26, 1985, the defendant was convicted of operating while intoxicated (O.W.I.) and sentenced to $100 in costs and 1 year suspended. Pursuant to the Sentencing Reform Act and applicable guidelines § 4A1.1(c), the defendant is assessed 1 point.

(f) On August 2, 1985, the defendant was convicted of public intoxication and disorderly conduct. He was sentenced to $25 costs and 10 days in jail. Pursuant to the Sentencing Reform Act and applicable guidelines § 4A1.1(c), the defendant is assessed 1 point.

(g) On June 26, 1986, in cause number CR–86–150, the defendant was convicted of possession of controlled substances, and sentenced to 1 year suspended. Pursuant to the Sentencing Reform Act and applicable guidelines § 4A1.1(c), the defendant is assessed 1 point.

(h) On September 22, 1986, in CCR–86–23, the defendant was convicted of maintaining a common nuisance and sentenced to 1 year plus a $150 fine. On that same date, a separate count in the same cause number CCR–86–23, the defendant was convicted of dealing in a controlled substance and sentenced to 6 months and a $75 fine. Pursuant to the Sentencing Reform Act and applicable guidelines § 4A1.1(b), the defendant is assessed 2 points.

(i) Since the defendant committed the instant offense less than 2 years after release of imprisonment, that is, the sentences imposed on September 22, 1986, and CCR–86–23, dealing in controlled substances, the defendant is assessed 2 points pursuant to the Sentencing Reform Act Guideline § 4A1.1(e).

(j) Based on the facts stipulated in subparagraph (a) through (i) above, the defendant's criminal history points equal 11 and the defendant's criminal history category is V under Guideline § 4A1.1(c); and

(k) The defendant and his attorney and the government acknowledge that the above calculations are preliminary in nature and subject to revision by the Court in light of investigation by the United States Probation Officer and the Court's determination of the facts and the applicable law. The validity of this plea agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

Based on the stipulated offense levels and criminal history points set forth above, Bennett's sentence range pursuant to the Guidelines would have been 26–33 months.

The agreement and stipulation between Booker and his attorney and the government provided that:

(a) The amount of crack-cocaine involved was six "rocks" weighing approximately .4 grams or 400 milligrams: therefore, under Guideline 2D1.1, the adjusted offense level is level 14.

(b) In recognition of the defendant's acceptance of responsibility for his conduct in connection with this offense, the defendant is entitled to a two-level reduction in the offense level under Guideline § 3E1.1.

(c) On March 29, 1970, the defendant was sentenced for armed robbery. The imposition of sentence was imposed more than 15 years prior to the defendant's commencement of the instant offense, and is therefore not counted pursuant to § 4A1.2(e).

(d) That on October 6, 1986, the defendant was convicted of maintaining a common nuisance in CCR86–19 and sentenced to 4 years suspended, a fine of $350.00 plus costs. The defendant was also convicted of another count in CCR–86–19, possession of a Schedule I Controlled Substance, and was sentenced to 3 years, probation for 3 years, to serve 1 year. On the sentence of maintaining a common nuisance, the defendant receives 1 point pursuant to § 4A1.1(c). On the charge of possession of a Schedule I Controlled Substance where the defendant received a term of 1 year, the defendant received a sentence of 1 year; therefore, pursuant to § 4A1.1(b), the defendant is assessed 2 points.

(e) On October 16, 1986, in cause number CR86–115, the defendant was convicted of possession of a controlled substance, and sentenced to a term of 5 years with 4 years suspended. Pursuant to § 4A1.1(b), the defendant is assessed 2 points.

(f) Since the defendant committed the instant offense while under a criminal justice sentence, i.e., probation on the controlled substance charge in CCR–86–19 and CCR–86–115, pursuant to § 4A1.1(d), the defendant is assessed 2 points.

(g) That for purposes of applying the Sentencing Guidelines in this case, the defendant's convictions in CCR86–19, possession of a Schedule I Controlled Substance, and CCR 86–115, possession of a controlled substance, said sentence imposed on October 6, 1986 and October 16, 1986, respectively, were related cases as defined in the comentary [sic] to Chapter 4 found at page 4.7 of the Sentencing Guidelines, and thus, should not be calculated under § 4B1(b) as 2 prior felony convictions.

(h) Based on the facts stipulated in sub-paragraph (a) through (g) above, the defendant's criminal history points equal 7 and the defendant's criminal history category is IV under Guideline § 4a1.1(c); and

(i) The defendant and his attorney and the government acknowledge that the above calculations are preliminary in nature and subject to revision by the Court in light of investigation by the United States Probation Officer and the Court's determination of the facts and the applicable law. The validity of this plea agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

Based on the stipulated offense levels and criminal history points set forth above, Booker's sentence range pursuant to the Guidelines would have been 21–27 months.

The agreement and stipulation between Lawson and his attorney and the government provided that:

(a) The amount of cocaine-crack involved was six "rocks" weighing approximately .4 grams or 400 milligrams: therefore, under Guideline 2D1.1, the adjusted offense level is level 14.

(b) In recognition of the defendant's acceptance of responsibility for his conduct in connection with this offense, the defendant is entitled to a two-level reduction in the offense level under Guideline § 3E1.1.

(c) The defendant, Dwight L. Lawson, has no known criminal convictions.

(d) Based on the facts stipulated in subparagraph (a) through (c) above, the defendant's criminal history points equal 0 and the defendant's criminal history category is I under Guideline § 4A1.1(c); and

[e] The defendant and his attorney and the government acknowledge that the above calculations are preliminary in nature and subject to revision by the Court in light of investigation by the United States Probation Officer and the Court's determination of the facts and the applicable law. The validity of this plea agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

Based on the stipulated offense levels and criminal history points set forth above, Lawson's sentence range pursuant to the Guidelines would have been 10–16 months.

All three plea agreements also included non-binding recommendations by the government that each defendant be sentenced at the low end of the applicable sentencing guideline range.

Before accepting the guilty pleas, this court engaged each defendant in a colloquy pursuant to Rule 11(d) of the Federal Rules of Criminal Procedure to establish that a factual basis existed for each defendant's guilt and to ensure that the pleas were knowingly and voluntarily entered. The defendants do not contest the validity of their guilty pleas. Their complaint regarding the guilty pleas is that they did not receive the benefit of their bargain with the government which induced these pleas.

Subsequent to accepting the guilty pleas, this court ordered a presentence investigation report from the United States Probation Office. The results of the presentence reports revealed errors in the United States Attorney's and the defense attorneys' calculations of expected sentencing ranges. In the case of Bennett, the probation officer included "relevant conduct" of other amounts of cocaine base-crack which were sold or discovered on the premises the day before and the day of the sale alleged in the indictment. Such additional amounts were not alleged in the indictment and were not part of Bennett's guilty plea. Consideration of the "relevant conduct" raised the base level offense from the expected 14 to an offense level of 20. The probation report included a reduction of two levels for acceptance of responsibility and reduced the expected criminal history points from 11 to 9 by not counting 2 past criminal convictions. The result of the presentence report for Bennett was to set the guideline range at 41–51 months, an increase of 15 months at the low end and 18 months at the high end from the preliminary calculations of the attorneys involved.

In the presentence report on Booker, the probation officer again included "relevant conduct" of the above mentioned additional crack which was not a part of Booker's guilty plea. In addition, the presentence report indicated that Booker was the leader of the scheme, increasing his offense level by two points, but decreased his offense level by two points for acceptance of responsibility. Consideration of the above factors resulted in a total offense level of 20. The probation officer also reduced the expected criminal history calculation from seven points to five points because the investigation revealed that Booker did not have a conviction for maintaining a common nuisance. The result of Booker's presentence report was to set the guideline range at 41–51 months, an increase of 20 months at the low end and 24 months at the high end from the preliminary calculations of the attorneys involved.

Mr. Lawson's presentence report also increased his offense level to 20 due to the additional crack involved as "relevant con-

duct." The probation officer reduced Lawson's offense level by four points because he was a minimal participant in the criminal activity. The offense level was reduced an additional two points due to Lawson's acceptance of responsibility. No criminal history points were assessed. As a result of the presentence report, Lawson's guideline range became 15 to 21 months, an increase of 5 months from the preliminary calculations of the attorneys involved.

The defendants raise several objections to imposition of sentences within the ranges calculated by the probation officers in the presentence reports. First, defendants contend that the government should be bound by the preliminary calculations set forth in the plea agreements. Second, the defendants contend that there are several problems with the Sentencing Guidelines which render them unconstitutional. Third, the defendants contend that even if the deficiencies in the Sentencing Guidelines do not render them unconstitutional, the problems create a sufficient basis upon which this court may depart from the guideline ranges. In addition, defendant Lawson contends that consideration of the additional crack as "relevant conduct" is inappropriate in a "charge offense system" such as the Guidelines were intended to be. Finally, the defendants contend that there are fair and just reasons for this court to allow them to withdraw their guilty pleas.

*Analysis*

I.

■ First, the government is not bound by the preliminary calculations of the guideline ranges for the defendants. This was never the intent of making the preliminary calculations. In fact, each plea agreement and the court's colloquy bear out just the opposite intent; the parties were *not* to be bound by the preliminary calculations. In the plea agreement itself, the parties agreed and stipulated that:

The defendant and his attorney and the government acknowledge that the above calculations are preliminary in nature and subject to revision by the Court in light of investigation by the United

States Probation Officer and the Court's determination of the facts and the applicable law. The validity of this plea agreement is not contingent upon the Probation Officer's or the Court's concurrence with the above calculations.

Furthermore, the defendants all responded affirmatively to the following questions posed by this court at the time they entered their guilty pleas:

"Do you understand that the court will not be able to determine the guideline sentence for your case until after the Presentence Report has been completed ..."

and

"Do you understand that when your lawyer went through this guideline prediction with you before hand, that was simply her best estimate as to where things were going to turn out and is not in any way a guarantee of where its going to turn out? Do you understand that?"

■ Defendants argue that the preliminary calculations were stipulations of fact pursuant to § 6B1.4. Defendants contend that by stipulating the amount of crack involved, the government has inferred that the additional amounts were irrelevant and implied that information about the additional amounts would not be provided to probation. The inferences and implications drawn by the defendants are simply not reasonable. This is especially so in light of the fact that § 6B1.4(d) of the Sentencing Guidelines specifically provides that:

The court is not bound by the stipulation, but may with the aid of the presentence report, determine the facts relevant to sentencing.

## II.

■ Second, establishment of the Sentencing Commission and promulgation of the Guidelines was held to be constitutional by the United States Supreme Court in *Mistretta v. United States,* — U.S. —, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The Seventh Circuit, in *United States v. Pinto,* 875 F.2d 143 (7th Cir.1989), upheld the constitutionality of the Guidelines against a claim of due process violation. The Seventh Circuit specifically addressed the same contention made by Bennett, Booker and Lawson concerning their right to individualized sentences. The *Pinto* court stated,

The Guidelines do not eliminate "individualized" sentences. Offense and offender characteristics still count—often a great deal ... that each judge must do things the same way unless there is a ground for departure, which is allowed under defined circumstances, 18 U.S.C. § 3553(b), hardly eliminates individuation in sentencing: the complexity of the Guidelines testifies to the effort to take many crime- and offender-specific features into account.

*Id.* at 144–45.

## III.

The Seventh Circuit has yet to address the issue of whether consideration of additional amounts of drugs, not included in the charging indictment, is appropriate as "relevant conduct" under § 1B1.3(a)(1), (2) of the Sentencing Guidelines. Sections 1B1.-3(a)(1) and (2) allow consideration of the following conduct in determining the applicable guideline range:

(1) all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction;

Defendant Lawson argues that it is inappropriate to consider the additional crack which was not part of the charging indictment and that it is inappropriate to consider any conduct which did not occur on the date set forth in the indictment. Lawson

relies on the policy statement found in Chapter 1, paragraph 4A of the Sentencing Guidelines wherein the Commission determined to move away from development of a "real offense" system and towards a "charge offense" system. However, Lawson failed to note that the policy statement specifically recognized that "[t]he system is not, however, pure; it has a number of real elements." Included among some of the "real elements" are relevant conduct pursuant to § 1B1.3(a).

■ The courts which have addressed the "relevant conduct" issue since revision of § 1B1.3 on January 15, 1988, have held that "[t]he guidelines make plain that the district court is not bound by the quantity of drugs mentioned by the indictment." *United States v. Sarasti*, 869 F.2d 805, 806 (5th Cir.1989). In *United States v. Guerrero*, 863 F.2d 245 (2d Cir.1988), the court held that consideration of distribution of 698 grams of heroin on December 11 was appropriate as "relevant conduct" since the distribution on December 11 was part of the common scheme that included the charged offense which occurred on December 4. *Id.* at 249.

The presentence investigation of the defendants revealed that not only was there the charged distribution of .4 grams of crack on July 19, 1988 at 711 East Wayne Street, defendant Lawson's residence, but there was also a sale of .2 grams of crack to a confidential informant on July 18, 1988 at the house. A search of the house on July 19, 1988 disclosed 2.9 grams of heroin, 1.8 grams of crack, and .4 grams of cocaine powder. The Probation Office included the .2 grams of crack sold on July 18, 1988 and the 1.8 grams of crack found in the residence on July 19, 1988 as "relevant conduct" in the computation of the offense level because they were part of the same course of conduct or part of a common scheme or plan as the count of conviction. The Probation Office did *not* consider the 2.9 grams of heroin or the .4 grams of cocaine powder because they could not be determined to be part of this particular operation.

This court finds no reason to depart from the rationale of the Fifth Circuit Court of Appeals or the Second Circuit Court of Appeals for looking beyond the indictment for "relevant conduct" to be considered in determining the appropriate offense level under the Sentencing Guidelines. Clearly, where the indictment charges distribution of crack and aiding and abetting distribution of crack, then a sale of crack by the defendants the day before the indicted offense and additional crack found on the premises the day of the indicted offense are part of the common scheme to distribute crack.

■ Defendants contend, however, that before the "relevant conduct" may be considered, it must be proven by "clear and convincing" evidence. There is no case law cited by defendants to support their proposition. The government contends that the court should adopt the reasoning in *United States v. Silverman*, 692 F.Supp. 788 (S.D. Ohio 1988). After a thorough analysis of the appropriate burden of proof in pre-guidelines sentencing hearings, the *Silverman* court stated:

> [T]he Court finds that it would be improper to apply the clear and convincing evidence standard advanced by defendant. In light of the lack of an express statute or provision in Fed.R.Crim.P. 32 governing burden of proof and considering the comments on the Supreme Court in *McMillan [v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)]*, it may be that no particular burden of proof need be established for sentencing proceedings. However, for purposes of this case, the Court will apply a preponderance of the evidence test to the factual matters set forth in the presentence report which are used to determine the offense level.

*Id.* at 791. In *United States v. Dolan*, 701 F.Supp. 138 (E.D.Tenn.1988), the district court specifically rejected defendant's contention that the burden of proof at a sentencing hearing should be "clear and convincing." In holding that the proper standard was "a preponderance of the evidence", the *Dolan* court cited several Su-

preme Court cases in support of its conclusion that this standard would fully satisfy due process. *Id.* at 140. Therefore, absent any law to the contrary, this court believes that a preponderance of the evidence standard for sentencing hearings is appropriate and comports with due process.

### IV.

Finally,[1] defendants contend that this court should allow them to withdraw their guilty pleas pursuant to Rule 32(d) of the Federal Rules of Criminal Procedure. All three defense attorneys argue that they offered the defendants ineffective assistance of counsel in negotiating the plea agreements. Due to the complexity of the Sentencing Guidelines and the discretion held by the probation officers in assessing the facts about each defendant, the attorneys contend that there was no competent way to anticipate the sentence ranges for each defendant.

█ The government takes issue with defense counsels' characterization of their joint efforts to anticipate sentencing ranges as incompetency of counsel. As the government correctly points out, counsels' representation is not incompetent unless it falls below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Assistant United States Attorney along with the three defense attorneys worked together in analyzing the same facts considered by the Probation Office. The mere fact that four competent attorneys arrived at the same result negates a holding of "objectively unreasonable." The significant variance between the attorneys' calculations and probation's is indicative of a failure of the local bar to fully comprehend application of the Sentencing Guidelines, but it is not incompetency. This court recommends that the local bar, especially the defense attorneys, make a more diligent effort to become familiar with application of the Sentencing Guidelines so as to avoid the suprise of future

sentencing range recommendations made by the Probation Office.

Although this court finds that defendants did not receive ineffective assistance of counsel, this does not end the inquiry into whether fair and just reasons exist to allow defendants to withdraw their guilty pleas. Rule 32(d) of the Federal Rules of Criminal Procedure provides in pertinent part:

> (d) Plea Withdrawal. If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentencing is imposed, ... the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason.
>
> . . .

"A defendant does not have an absolute right to withdraw his guilty plea, and the decision whether to allow him to do so is within the sound discretion of the trial court." *United States v. McFarland*, 839 F.2d 1239, 1241 (7th Cir.1988). The defendant must "demonstrate that a 'fair and just' reason exists for withdrawing his guilty plea." *United States v. Ellison*, 835 F.2d 687, 692 (7th Cir.1987). In *Santobello v. New York*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971), the United States Supreme Court held that the opportunity to withdraw a guilty plea was an appropriate remedy where there was a clear prosecutorial breach of an unambiguous promise in a plea agreement. The Seventh Circuit has developed a set of principles to govern interpretation and enforcement of ambiguous plea agreements. *United States v. Fields*, 766 F.2d 1161, 1167 (7th Cir.1985). In *United States v. Bowler*, 585 F.2d 851 (7th Cir.1978), the court held that in order to protect the plea bargaining defendant from overreaching by the prosecutor and to ensure the integrity of the plea bargaining procedure, "the most meticulous standards of both promise and performance must be met by prosecutors engaging in plea bargaining." *Id.* at 854. In *United States v. Mooney*, 654 F.2d 482 (7th Cir.1981), the court held that:

---

**1.** The defendants also argue that this court should depart from the Guidelines in sentencing

them. This court will defer ruling on the departure requests until time of actual sentencing.

A plea bargain is a contract, the terms of which necessarily must be interpreted in light of the parties' reasonable expectations.

*Id.* at 486. Finally, in *United States v. Strawser*, 739 F.2d 1226 (7th Cir.), *cert. denied*, 469 U.S. 1038, 105 S.Ct. 518, 83 L.Ed.2d 407 (1984), the court held that interpretation of disputed terms in a plea agreement should be determined by the district court based on objective standards. *Id.* at 1229–30.

A thorough research of recent opinions revealed only one post-Guidelines case which has dealt with a Rule 32(d) request to withdraw plea due to a disparity in the Guideline ranges anticipated in a plea agreement and recommended in the presentence report. In *United States v. Loman*, 1 Fed.Sent.R. 290, 1988 WL 112538 (W.D. Mo.1988), where the plea agreement anticipated a range of 10–16 months and the presentence report resulted in a range of 18–24 months, the district court recognized that

> Guideline confusion is likely to be rather common, and there must be considerable caution used in granting relief from pleas that may have been affected by judgment-calls that turn out to be erroneous.

*Id.* at 290. Despite the court's grave concern about granting withdrawal of pleas based on a "judgment call", the court granted defendant's Rule 32(d) motion, stating that the defendant was reasonably justified in having a mistaken impression of the likely sentencing range due to a plain error of law which caused the anticipated range to be erroneous. *Id.*

The miscalculations in Bennett's, Booker's and Lawson's plea agreements were not caused by a "plain error of law"; they were judgment calls of the attorneys as to how "relevant conduct" would apply. The government contends that absent incompetence of counsel there are no "fair and just" reasons to allow the defendants to withdraw their pleas. The government argues that the defendants were well aware the plea range calculations were preliminary and subject to change; the "only ex-

pectation that the government created in the defendants is that the defendants would be sentenced at the low end of the guideline range wherever that range finally turned out to be."

While it is true that all parties involved knew that the plea agreement calculations were only preliminary and subject to change, it does not follow that the plea negotiations created *no* expectations regarding a sentencing range. Clearly, even the Assistant United States Attorney admits that he expected the anticipated range to be "close" to the presentence report range. The acknowledgement that the anticipated ranges were subject to change was merely an acknowledgement that the final ranges would be somewhere in the neighborhood of the anticipated ones.

■ In the case of Lawson, his final range of 15–21 months includes the high end of his anticipated range of 10–16 months. This is clearly within the expectation created by the plea agreement and there is no fair and just reason for allowing Lawson to withdraw his guilty plea.

■ As for Bennett and Booker, however, their final ranges wound up halfway across town from their expected neighborhoods. Bennett clearly had a legitimate expectancy in not only the anticipated range of 27–33 months, but also in ranges of 30–37 and 33–41 months. The actual range of 41–51 months is simply beyond the scope of expectancy created by the plea agreement. It would be unfair and unjust to enforce the contract between the defendant and the government where the defendant was induced by a promise which could not be kept.

The same rationale applies to the expectations of Booker; he would have no legitimate complaint if his final range increased from the anticipated 21–27 months to 24–30 or 27–33 months. While any of these ranges are easily within the scope of expectancy of the plea agreement as written, the range of 41–51 months is too far afield.

■ This court reiterates that "considerable caution" will be used in granting relief from pleas. "Rational conduct re-

quires that voluntary responses made by a defendant under oath before an examining judge be binding." *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir.1987). Only under exceptional circumstances, such as the great disparity between Bennett's and Booker's plea bargain expectancy and their presentence report reality, will a motion to withdraw a guilty plea be granted.

*Conclusion*

Based on the foregoing, this court finds that the sentencing recommendations of the United States Probation Office concerning defendants Bennett, Booker and Lawson are proper as a matter of law. Further, this court hereby DENIES Lawson's motion to withdraw his guilty plea and GRANTS Bennett's and Booker's motions to withdraw their guilty pleas.