UNITED STATES of America,
Plaintiff–Appellee,

v.

Donnie Roy O'NEAL,
Defendant–Appellant.

No. 89–10051.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 8, 1990.

Decided Aug. 9, 1990.

As Amended on Denial of Rehearing and Rehearing En Banc July 2, 1991.

Stephen Mensel, Asst. Federal Public Defender, Fresno, Cal., for defendant-appellant.

Lawrence Lincoln, Asst. U.S. Atty., Fresno, Cal., for plaintiff-appellee.

Before WALLACE, ALARCON and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

## FACTS AND PROCEEDINGS

On November 30, 1987, police chased Donnie Roy O'Neal through the streets of Clovis, California. O'Neal abandoned his car in a pasture and fled on foot. When an officer ordered him to stop, O'Neal reached for his waistband and then extended his arm in the direction of the officer. O'Neal was later arrested. A gun holster was recovered from the site where O'Neal extended his arm. Government agents also recovered a gun from close to the site of O'Neal's arrest. The agents traced the gun to a friend of O'Neal, who said she noticed the gun missing shortly after a visit by O'Neal.

In January 1988 O'Neal was indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (1988). The government gave notice of its intention to seek enhanced penalties pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e) (1988). A jury found O'Neal guilty as charged. The district court enhanced the applicable penalty to O'Neal's offense and sentenced him to 360 months imprisonment with five years of supervised release.

O'Neal attacks the use of his prior convictions to enhance his penalty. He also mounts numerous other procedural and constitutional challenges to the legality of his sentence. We affirm.

## DISCUSSION

### I. ENHANCED PENALTY UNDER SECTION 924(e)

The district court relied on five of O'Neal's prior convictions to determine that O'Neal was subject to a penalty enhancement as a career criminal under 18 U.S.C. § 924(e). Two of these were for second degree burglary and one for second degree attempted burglary, all under Cal.Penal Code § 459.[1] A fourth conviction was for assault with a deadly weapon, in violation of Cal.Penal Code § 245 (1969). The fifth was for vehicular manslaughter, in violation of Cal.Veh.Code §§ 23101a, 20001, and 23109b (1976) and Cal.Penal Code § 192.3a (1976). O'Neal contends that none of these convictions can be used to enhance his penalty for being a felon in possession of a firearm.[2]

■ We review de novo a district court's interpretation and application of the Armed Career Criminal Act. *United States v. Potter*, 895 F.2d 1231, 1235 (9th Cir.1990), *cert. denied*, —— U.S. ——, 110 S.Ct. 3247, 111 L.Ed.2d 757 (1990).

Title 18, United States Code, section 924(e)(1) imposes a mandatory minimum sentence of fifteen years for felons in possession of a firearm if the felon "has three previous convictions ... for a violent felo-

---

1. The offenses occurred in 1967, 1968, and 1975. During these years, the relevant part of Cal.Penal Code § 459 provided in part:

   Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, ... railroad car, locked or sealed cargo container, ... any house car, ... inhabited camper, ... vehicle ... when the doors are locked, aircraft, ... or mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary.

2. O'Neal initially attacks the district court's use of the convictions because the district court failed to formally inform him it would consider the five convictions for enhancement purposes. O'Neal is unpersuasive. There appears to be some early confusion as to which convictions the government would use in seeking the enhancement. However, prior to O'Neal's sentencing, the government filed a motion on December 19, 1988 indicating the government relied on the five prior convictions to seek the enhancement. O'Neal then filed a reply on December 29, 1988, in which he states: "The government's brief in support of enhanced penalties ... states that the Court may consider the five cited convictions in order to arrive at the necessary three convictions [for enhancement]. Mr. O'NEAL, based upon the government's brief *presumes the court will do so.*" Clerk's Record 55, at 1–2 (emphasis added). The reply then attacks the government's motion. Thus, there is no substance to O'Neal's argument that he was deprived of proper notice and an opportunity to argue the existence and potential enhancement use of the convictions prior to sentencing.

ny." Section 924(e)(2)(B) defines a violent felony as an offense carrying a term of imprisonment exceeding one year that

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary ... or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B)(i)–(ii).

We therefore turn to the question of whether three of O'Neal's prior convictions (1) have as an element of the offense the use or threatened use of force; (2) are for burglary; or (3) otherwise involve conduct that presents a serious potential risk of physical injury to another.

### A. Assault with a Deadly Weapon

■ O'Neal seems to concede that his prior felony conviction for assault with a deadly weapon under Cal.Penal Code § 245 qualifies as a violent felony under section 924(e). *See* Supplemental Reply Brief at 2. In any event, we conclude that the offense qualifies as a violent felony under section 924(e)(2)(B)(i) because the offense has as an element the attempted use of force. *People v. Parrish,* 170 Cal.App.3d 336, 342, 217 Cal.Rptr. 700, 704 (1985) ("Assault is an attempted battery.").

### B. Vehicular Manslaughter

■ O'Neal argues that his prior conviction for vehicular manslaughter does not qualify as a violent felony under section 924(e). O'Neal recognizes that we have held that involuntary manslaughter is a violent felony for purposes of 18 U.S.C. § 924(c) (1988), which proscribes the use of a firearm in a crime of violence.[3] *United States v. Springfield,* 829 F.2d 860, 863 (9th Cir.1987). O'Neal argues, however,

that our precedent regarding involuntary manslaughter should not apply to the crime of vehicular manslaughter.

O'Neal offers no principled reason to distinguish vehicular manslaughter from involuntary manslaughter. In *Springfield* we held that involuntary manslaughter is a crime of violence because it "involves the death of another person [and] is highly likely to be the result of violence." *Id.* at 863. Vehicular manslaughter, like involuntary manslaughter, involves the death of a human being under violent circumstances. We therefore hold that it qualifies as a violent felony under section 924(e)(2)(B)(ii) in that it "involves conduct that presents a serious potential risk of physical injury to another."

### C. The Burglary Convictions

O'Neal argues that none of his burglary convictions are violent felonies for purposes of section 924(e). O'Neal relies on *United States v. Chatman,* 869 F.2d 525 (9th Cir.1989), for the proposition that a burglary conviction under Cal.Penal Code § 459, as were all his burglary convictions, does not fall under the common law definition of burglary and thus cannot be considered violent under section 924(e). *See id.* at 527.[4] In *Taylor v. United States,* — U.S. ——, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court held that 18 U.S.C. § 924(e) is not limited to the common-law definition of "burglary" as we held in *Chatman* and concluded that "a person has been convicted of burglary for the purpose of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in a building or

---

**3.** Section 924(c) is similar in language to section 924(e). Section 924(c)(1) mandates a five-year enhancement to any sentence imposed for the commission of a "crime of violence" if the perpetrator carried a firearm during the commission of the offense. Section 924(c)(3) defines a crime of violence as a felony that:

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) [ ] by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

**4.** We followed *Chatman* for this proposition in *United States v. Hunt,* 893 F.2d 1028, 1030–31 (9th Cir.1990); *United States v. Harkey,* 890 F.2d 1082, 1084 (9th Cir.1989); *United States v. Cunningham,* 878 F.2d 311, 312 (9th Cir.1989).

structure, with intent to commit a crime." *Id.* 110 S.Ct. at 2158.

The *Taylor* Court noted, however, that some states define burglary more broadly than its generic definition by eliminating the requirement that the entry be unlawful, or by including places other than buildings. California is such a state. *See* Cal.Penal Code § 459 (1988). In then discussing the question of whether, in the case of a defendant who has been convicted under a non-generic burglary statute, sentence enhancement could be sought on the grounds that the defendant had in fact committed a generic burglary, the Court adopted a formal categorical approach requiring the trial court to "look only to the fact of conviction and the statutory definition of the prior offense." *Taylor,* 110 S.Ct. at 2160 (approving of *United States v. Sherbondy,* 865 F.2d 996, 1006–10 (9th Cir.1988)).

The Court in *Taylor* said, however, that the categorical approach may permit the trial court to go beyond the mere fact of conviction in cases in which a jury was actually required to find all the elements of generic burglary. *Id.* Hence, an offense constitutes burglary for purposes of section 924(e) sentence enhancement in cases in which "the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id.*

We do not believe that while suggesting that the categorical approach "may permit the sentencing court to go beyond the mere fact of conviction" that the Court limited the possibilities to the example given; that is, a jury finding. In our view, this refinement of the categorical approach by the Supreme Court also allows for enhancement purposes the use of convictions based on guilty pleas to charges that contain all the elements of generic burglary. In both instances, the sentencing court is limited to a review of the indictment or other charging papers and the resulting judgment of conviction;[5] no inquiry into the underlying

facts, which was the Supreme Court's primary concern, is involved.

The Court noted that Taylor's burglary convictions were in Missouri state courts in 1963 and 1971. In those years, Missouri had seven different statutes under which one could be charged with second degree burglary. All seven required entry into a structure, but they varied as to the type of structure and means of entry involved. The *Taylor* Court concluded that it was not apparent from the record which of those statutes were the basis for Taylor's prior convictions and remanded for further proceedings. Just as it is necessary to look at the charging paper to determine which burglary statute applied to Taylor, it is necessary to look at the charging paper to determine whether O'Neal was convicted of generic burglary within the broader California definition of burglary.

On June 28, 1967, O'Neal was charged before the Superior Court of the State of California as follows:

> The District Attorney of the county of Fresno hereby accuses Donny Roy O'Neal ... of a felony, to wit: violation of section 459 of the penal code, burglary, 2nd dg., in that ... [O'Neal] wilfully and unlawfully entered a building, to wit: the Dime Self Service Laundromat, ... with intent to commit theft therein.

Clerk's Record 53, tab A–1. The resulting judgment of conviction stated:

> This certifies that ... [Donnie Roy O'Neal] was convicted by [the] Court; on his plea of guilty; of the crime of Burglary, 2nd degree in violation of section 459 of the Penal Code of the State of California.

*Id.* at tab A–7. The record thus reveals that O'Neal was convicted of violating Cal. Penal Code § 459 by unlawful entry into a building with intent to commit a crime.

O'Neal contends, however, that unlawful entry is not an element of burglary under California law, and therefore that his admission of unlawful entry was "irrelevant" to his conviction. *See United*

5. In the case of a jury trial, of course, the sentencing court is also to consider the jury instructions.

*States v. Burke,* 694 F.2d 632, 634 (9th Cir.1982) (guilty plea constitutes "an admission *of all facts necessary for conviction"* (emphasis added)). O'Neal is correct in his first assertion; unlawful entry is not by itself a necessary element of burglary under California law. *See* Cal.Penal Code § 459 ("Every person who enters [any structure], with intent to commit grand or petit larceny or any felony is guilty of burglary."). Nonetheless, in *People v. Gauze,* 15 Cal.3d 709, 542 P.2d 1365, 125 Cal.Rptr. 773 (1975), the California Supreme Court held that a defendant cannot be guilty of burglarizing his own home. *See id.* at 716–17, 542 P.2d at 1369, 125 Cal.Rptr. at 777. Hence, under California law, an indictment charging entry into a structure with intent to commit grand or petit larceny is not sufficient to make out a case of burglary. The state must also allege in some way that the defendant did not have an unconditional possessory right to enter the structure. Here, O'Neal was charged with unlawful entry of the Dime Self Service Laundromat with intent to commit theft therein. O'Neal pled guilty to the charge. We conclude that the allegation of unlawful entry was material to the statement of the crime of burglary. *See Burke,* 694 F.2d at 634.

■ Since O'Neal was convicted of at least three previous felonies qualifying as violent felonies under section 924(e), the district court's decision to enhance O'Neal's sentence was proper.[6]

## II. O'NEAL'S SENTENCE UNDER THE GUIDELINES

The district court sentenced O'Neal to 360 months imprisonment under the career

**6.** Although we do not quote from the criminal complaints and judgments of conviction supporting O'Neal's convictions for assault with a deadly weapon and vehicular manslaughter, those documents are also part of the record. *See* Clerk's Record 53, tabs B–1 and B–8 (assault with a deadly weapon); *id.* at tabs E–1 and E–7 (vehicular manslaughter).

**7.** Under the career offender provisions of the Guidelines, the district court must determine the applicable statutory maximum for the present offense. On the basis of this determination, Guideline 4B1.1 assigns an offense level that is then used to compute the sentencing

offender provisions of the Sentencing Guidelines applicable to offenses committed at the time of O'Neal's offense. *See* Guideline 4B1 (1988).[7] O'Neal argues that the district court erred in determining that he was a career offender under the Guidelines.

■ We review de novo the interpretation of a provision of the Sentencing Guidelines. *United States v. Williams,* 891 F.2d 212, 214 (9th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1496, 108 L.Ed.2d 631 (1990).

Guideline 4B1.1 provides in part that a defendant is a career offender if (1) he is at least eighteen years old at the time of the instant offense; (2) the instant offense of conviction is a felony that is a crime of violence; and (3) the defendant has at least two prior felony convictions that are crimes of violence. Only the second and third requirements are at issue in this case.

### A. The Instant Offense

At the time of O'Neal's offense, Guideline 4B1.2 defined a "crime of violence" by reference to 18 U.S.C. § 16 (1988).[8] Under section 16, a crime of violence is

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

range. In this case, the district court found that O'Neal's enhanced maximum penalty under section 924(e) was life in prison. The corresponding offense level under Guideline 4B1.1 is an offense level of 37, with a category VI criminal history. Guideline 4B1.1. The resulting sentencing range is from 360 months to life. Sentencing Guidelines Ch. 5, Part A, Sentencing Table.

**8.** Guideline 4B1 was amended effective November 1, 1989, subsequent to the date in which O'Neal was sentenced. The amendment eliminates all reference to 18 U.S.C. § 16. Guideline 4B1 (1990).

■ At the outset, we note that section 16(a) does not apply to the instant offense: the offense of possession of a firearm by a felon does not have as an element the use or threatened use of physical force against person or property.

■ Section 16(b) explicitly limits its application to felonies which, by their nature, involve a substantial risk that physical force will be used against person or property. O'Neal argues that our analysis of whether an offense is violent under section 16(b) must be categorical, i.e., by reference to the statute of conviction rather than the facts underlying the offense. The government argues that inquiry into the underlying facts of the offense is allowed by the Commentary to Guideline 4B1.2, Application Note 1. *See United States v. Williams,* 892 F.2d 296, 304 (3d Cir.1989) (relying on commentary to inquire into the factual context of the offense), *cert. denied,* —— U.S. ——, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990).

We find it unnecessary to reach the issue of whether the commentary to Guideline 4B1.2 authorizes inquiry into the underlying facts of O'Neal's instant offense. A categorical analysis suffices to conclude that the offense of being a felon in possession of a firearm by its nature poses a substantial risk that physical force will be used against person or property. The history of the firearm laws reveals the strong congressional conviction that an armed felon poses a substantial threat to all members of society. *See* 18 U.S.C.App. § 1201 (1982) (congressional declaration that possession of firearms by felons poses threat to commerce and to the President and Vice President of the United States), repealed by Pub.L. 99–308, § 104(b), 100 Stat. 459 (1986); 114 Cong.Rec. 14,773 (1968) (comments of Senator Russell Long, sponsor of original version of 18 U.S.C. § 922(g)(1) in the Omnibus Crime Control and Safe Streets Act of 1968, to effect that felons "may not be trusted to possess a firearm without becoming a threat to society"); *cf. generally Scarborough v. United States,* 431 U.S. 563, 572–77, 97 S.Ct. 1963, 1967–70, 52 L.Ed.2d 582 (1977) (discussing congressional concerns of threat of armed felons, in context of fulfilling nexus requirement between commerce and a felon's possession of a firearm).

### B. O'Neal's Two Prior Convictions

■ We also conclude that O'Neal's convictions for assault with a deadly weapon and vehicular manslaughter qualify as violent felonies under Guideline 4B1.1. The attempted use of physical force is an element of the offense of assault with a deadly weapon. *People v. Parrish,* 170 Cal.App.3d 336, 342, 217 Cal.Rptr. 700, 704 (1985), and so qualifies as a violent felony under section 16(a). Vehicular manslaughter by its nature involves harm to persons, and thus qualifies as a violent felony under section 16(b). *See* discussion at IA–B, *supra.*

In sum, the district court did not err when it concluded that O'Neal was a career offender under the Guidelines and sentenced him accordingly.

### III. OTHER CHALLENGES TO THE SENTENCE

■ O'Neal challenges his sentence on various grounds. When the district court sentenced O'Neal, the constitutionality of the Guidelines was before the Supreme Court. *See Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) (upholding the constitutionality of the Guidelines against a separation of powers challenge). Thus, the court sentenced O'Neal to a forty-year term in case the Guidelines were found unconstitutional. O'Neal argues that the forty-year term, after good-time credits, is shorter than the thirty-year term imposed under Guidelines, and that his Guidelines sentence must bear some relationship to the alternative sentence. As a matter of fact, O'Neal concedes his Guidelines sentence would only be five years longer than the alternative sentence, which undermines their alleged disproportionality. Nevertheless, we know of no requirement, either statutory or by case law, that alternative sentences be proportional, and we refuse to imply one.

O'Neal also contends that his sentence is the result of an impermissible double enhancement because he was first determined a career criminal under 18 U.S.C. § 924(e) and then a career offender under Guideline 4B1.1. The application of the Guidelines did not constitute a double enhancement. The Guidelines are not "a separate statutory provision of penalties" but rather "are intended to provide a narrow sentence range within the range authorized by the statute for the offense of conviction." *United States v. Sanchez–Lopez*, 879 F.2d 541, 559 (9th Cir.1989). The application of Guidelines 4B1.1 did not provide for a penalty or enhancement additional to that which O'Neal could have received under section 924(e). There was no double enhancement.

Finally, O'Neal incorporates by reference the district court's comments in *United States v. Davis*, 715 F.Supp. 1473 (C.D.Cal. 1989), to the effect that the Guidelines violate the due process clause of the fifth amendment. We recently explicitly rejected the views expressed in *Davis*, however. *United States v. Wilson*, 900 F.2d 1350 (9th Cir.1990). O'Neal's argument thus fails.

## IV. REMAINING ISSUES

O'Neal contends that he was denied the effective assistance of counsel. O'Neal argues his attorney should have called more witnesses on his behalf, and in particular one man who would have testified that he did not have a gun as alleged in the indictment.

Because of the factual nature of a claim of ineffective assistance of counsel, the issue is properly brought on a habeas corpus petition rather than on direct appeal. *United States v. Sanclemente–Bejarano*, 861 F.2d 206, 211 (9th Cir.1988). Nevertheless, the record is sufficiently complete to allow us to decide the issue. We find the argument without merit. Even if defense counsel's failure to call more witnesses fell below the standard of competent representation, which we doubt, the strong evidence linking O'Neal to the possession of the gun makes it impossible for O'Neal to show

that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

AFFIRMED.