**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ramiro OLIVEROS–OROSCO,
Defendant–Appellant.**

**No. 90–50639.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 3, 1991.

Decided Aug. 19, 1991.

Lupe Martinez, Asst. Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Steven E. Zipperstein, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before FLETCHER, CANBY and BOOCHEVER, Circuit Judges.

CANBY, Circuit Judge:

Defendant Ramiro Oliveros–Orosco appeals the denial of his motion to withdraw his guilty plea and his sentence. He argues that this court's decision in *United States v. O'Neal*, 910 F.2d 663 (9th Cir. 1990), handed down after Oliveros–Orosco's plea but before his sentencing,[1] provided a compelling ground for withdrawal of the plea agreement. As to his sentence, Oliveros–Orosco challenges the district court's ruling that *O'Neal* applies retroactively and the court's finding that he possessed a firearm in connection with a counterfeiting scheme. We affirm.

## BACKGROUND

The government filed a three-count superseding indictment charging Oliveros–Orosco as follows: Count 1—violation of 18 U.S.C. § 472, possession of counterfeit currency; Count 2—violation of 18 U.S.C. § 922(g)(5), illegal alien in possession of a firearm; and Count 3—violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm. On July 23, 1990, Oliveros–Orosco entered a plea of guilty to count 3 of the superseding indictment.

After Oliveros–Orosco had pleaded guilty, but prior to sentencing, this court decided *United States v. O'Neal*, 910 F.2d 663 (9th Cir.1990). In *O'Neal*, we held that the offense of being a felon in possession of a firearm is a crime of violence for purposes of sentencing under the career offender provisions of the Sentencing Guidelines. On the basis of the *O'Neal*

decision, Oliveros–Orosco moved to withdraw his guilty plea on the ground that "the relevant sentencing law in effect at the time of entry of his plea, and upon which Mr. Oliveros–Orosco and his counsel relied, has recently been radically changed to the detriment of Mr. Oliveros–Orosco." The district court denied the motion.

At sentencing, Oliveros–Orosco also argued that there was insufficient evidence to support the presentence report's finding that he possessed a firearm in connection with the crime of possession of counterfeit currency. In support, Oliveros–Orosco offered to testify that he had no connection to the counterfeit money, never possessed the box containing the money, did not participate in any negotiations with respect to the counterfeit money, and his possession of the firearm was not related to the counterfeit money. The district court accepted the proffer but found that the firearm was possessed by Oliveros–Orosco in connection with the possession of counterfeit currency. The court based its finding on investigative reports of the United States Secret Service, the United States Bureau of Alcohol, Tobacco and Firearms, and the Los Angeles Sheriff's Department.

After argument, the district court stated that it was applying *O'Neal* retroactively and found that Oliveros–Orosco was a career offender under Sentencing Guidelines section 4B1.1. As a career offender, Oliveros–Orosco's sentencing range was 84 to 105 months. The court sentenced Oliveros–Orosco to 84 months imprisonment followed by three years of supervised probation.

## ANALYSIS

1. Motion to withdraw the guilty plea

Oliveros–Orosco argues that the trial court abused its discretion in denying his motion to withdraw the plea agreement. He asserts that this court's issuance of *United States v. O'Neal*, prior to sentenc-

---

**1.** On July 2, 1991, *O'Neal* was amended in part 937 F.2d 1369 (9th Cir.1991). The amendment

is not relevant to Oliveros–Orosco's appeal.

ing, provided a fair and just reason[2] to permit the withdrawal because neither he nor the government contemplated that he would be sentenced as a career offender. He contends that denial of leave to withdraw his plea was so unfair that it constitutes an abuse of the district court's discretion.

■ *United States v. Garcia*, 909 F.2d 1346 (9th Cir.1990), forecloses the defendant's argument. In *Garcia*, we held that an erroneous sentencing prediction (miscalculation of the Guideline range that would be applicable to defendant) does not entitle a defendant to withdraw his guilty plea. *Id.* at 1348. In reaching this conclusion, we noted that Garcia's plea was made with the full understanding that the sentencing court was not bound by any sentencing agreement. *See also United States v. Zweber*, 913 F.2d 705 (9th Cir.1990).

■ In the present case, Oliveros–Orosco was similarly advised that the district court was not bound by the plea agreement or his counsel's predictions. The court inquired whether Oliveros–Orosco had been informed of the maximum penalties he faced. The defendant responded in the affirmative. The prosecutor then set forth the maximum possible sentence, which was a term of imprisonment of ten years and a fine of $250,000. The court further inquired whether Oliveros–Orosco had discussed the Sentencing Guidelines with his attorney. The court advised the defendant that his attorney's predictions did not bind the court and explained that the court could impose any sentence up to the statutory maximum. Oliveros–Orosco's 84–month sentence falls well within the ten-year statutory maximum.

Oliveros–Orosco argues that *Garcia* is inapposite because it involved the miscalculation or erroneous prediction of a Guideline sentence. The defendant asserts that his counsel's advice and prediction that he would not be classified as a career offender was correct at the time the guilty plea was entered. This is a distinction without merit. A prediction is an inference regarding a future event. A prediction cannot be proved correct or incorrect until the future event has occurred. In this case, as in *Garcia*, counsel's prediction proved to be incorrect.

Finally, Oliveros–Orosco argues that his case is similar to *United States v. Bennett*, 716 F.Supp. 1137 (N.D.Ind.1989), *aff'd* 907 F.2d 152 (7th Cir.1990). We disagree. In the first place, *Bennett* involved a favorable exercise of the district court's discretion; here the district court denied leave to withdraw the plea, and the issue on appeal is whether that denial was an abuse of discretion. Moreover, in *Bennett* the district court permitted two of the three codefendants to withdraw from their plea agreements because of the great disparity between their expectations under the plea bargain and the presentence report's prediction of the sentencing range. There, however, the defendants' plea agreements included a stipulation for purposes of applying the Guidelines. Oliveros–Orosco's plea agreement did not indicate whether he would be sentenced as a career offender or would receive any particular sentence.[3]

## 2. Retroactive application of *United States v. O'Neal*

■ Oliveros–Orosco argues that the district court erred in applying *O'Neal* retroactively. This court considers three factors in determining whether a judicial decision should be applied retroactively: 1) whether the decision establishes a new rule of law; 2) whether retroactive application will further or retard the purposes of the rule in

**2.** Fed.R.Crim.P. 32(d) provides:

**Plea Withdrawal.** If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason.

**3.** We note that in *Bennett*, the court did not permit a third codefendant to withdraw from the plea agreement because the disparity between that defendant's expectancy and the presentence report's prediction of the sentencing range was minor. Oliveros–Orosco asserts that his sentence was increased 27 months as the result of his being treated as a career offender; the disparity between his original expectation and his ultimate sentence of 84 months does not indicate gross inequity.

question; and 3) whether applying the new decision will produce substantially inequitable results. *United States v. Gonzalez–Sandoval*, 894 F.2d 1043, 1052–53 (9th Cir.1990). Oliveros–Orosco asserts that these factors militate against retroactive application of *O'Neal*.

After *de novo* review, we conclude that the district court did not err in applying *O'Neal* retroactively. As the government points out, one need only review the *O'Neal* decision to see that the rule applies retroactively. If the rule set forth in *O'Neal* did not apply retroactively, it would not have applied to the defendant in that case.

The three-part test for retroactivity supports this result. Oliveros–Orosco argues that *O'Neal* established a new rule of law because it contradicts the rules for construction of statutes set forth in *United States v. Sherbondy*, 865 F.2d 996 (9th Cir.1988). He contends that *O'Neal* failed to follow *Sherbondy*'s categorical approach. In support, Oliveros–Orosco asserts that a number of hypothetical situations can be envisioned where a felon can be in "possession" of a firearm and not pose a substantial risk that physical force will be used against a person or property.

*O'Neal* does not establish a new rule for construction of statutes in contravention of *Sherbondy*. Although, as the defendant points out, the offense of being a felon in possession of a firearm does not necessarily involve a substantial risk of physical force, this offense constitutes a crime of violence as defined in 18 U.S.C. § 16 because Congress has indicated that it is "a felony ... that, *by its nature*, involves a substantial risk that physical force against the person or property of another may be used in connection with the crime." *O'Neal*, 910 F.2d at 667 (emphasis added). The categorical analysis in *O'Neal* is identical to the analysis undertaken in *Sherbondy*. There, the court noted that, although the offense of kidnapping, as defined by the Model Penal Code, did not include an element of violence, kidnapping was a "crime of violence." The court reasoned that this offense fell within the definition of a violent crime set forth in 18 U.S.C. § 924(e)(2)(B), because the offense entailed a "serious potential risk of physical injury." 865 F.2d at 1009.

In *Gonzalez–Sandoval*, we held that the Supreme Court's decision in *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), should be applied retroactively. *Mistretta* held the Sentencing Guidelines constitutional, effectively overruling this court's decision in *Gubiensio–Ortiz v. Kanahele*, 857 F.2d 1245 (9th Cir.1988), which had held them unconstitutional. We said that defendants were on notice that the Guidelines had been enacted by Congress and that the Supreme Court had granted review to decide their constitutionality. *Gonzalez–Sandoval*, 894 F.2d at 1053. Much the same situation applies here. In *O'Neal*, we interpreted 18 U.S.C. § 16, which defines the term "crime of violence." This provision was part of a properly enacted statutory scheme which was in effect at the time Oliveros–Orosco pleaded guilty. Our interpretation of that provision was not in conflict with any previous decision; it was a straightforward application of the statute. We therefore conclude that *O'Neal* does not establish a new rule of law, within the meaning of the three-part test we applied in *Gonzalez–Sandoval*.[4]

---

4. The government offers the definition of a "new rule" from *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). There the Court held that a case announces a new rule of law "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070 (1989) (plurality opinion) (emphasis in original). In *Teague*, however, the Court was deciding what decisional rules should be applied retroactively to final criminal decisions that were being challenged on collateral review.

*Teague*'s test does not determine what decisions should be applied retroactively to proceedings not yet final, *see id.* at 304, 109 S.Ct. at 1071–72, and we are not convinced that its definition of a "new rule" controls outside of *Teague*'s specific context. In any event, it is clear that the Supreme Court's strict rule against retroactive application of a "new rule" as defined in *Teague* has been applied only on collateral review. *Id.; see also Butler v. McKellar*, 494 U.S. 407, 110 S.Ct. 1212, 108 L.Ed.2d 347 (1990); *Sawyer v.*

Oliveros–Orosco argues that *O'Neal* does not further the Guidelines' objective of providing uniformity and proportionality in sentencing because it overrules *Sherbondy*. As stated above, *O'Neal* does not overrule *Sherbondy*. There is no reason to believe that the retroactive application of *O'Neal* will not further the Guidelines' purpose of uniform sentencing.

Finally, we do not believe the retroactive application of *O'Neal* will produce substantially inequitable results in this case. Oliveros–Orosco concedes that he was advised that he could be sentenced up to ten years in prison. His sentence is within the maximum range. *See Gonzalez–Sandoval*, 894 F.2d at 1053 (no inequitable results where retroactive application resulted in defendant receiving only an additional year of supervised release).

### 3. Counterfeiting scheme

Oliveros–Orosco argues that the district court's finding that he possessed a firearm in connection with the crime of possession of counterfeit currency is clearly erroneous. Relying on *United States v. Howard*, 894 F.2d 1085, 1090 (9th Cir.1990), the defendant asserts that, because he was seeking to lower the offense level, he bore the burden of proving by a preponderance of the evidence that he had no connection to the counterfeiting scheme. According to Oliveros–Orosco, his proffer satisfies this burden.

■ Oliveros–Orosco mischaracterizes *Howard*. *Howard* holds that the government bears the burden of proving the facts necessary to establish the base offense level. Once the base offense level is established, the party seeking to alter the base offense level bears the burden of proving the necessary facts. *Id.* at 1090. As Oliveros–Orosco notes, the effect of the court's ruling was to increase the base offense level by nine points. Therefore, it was the government that bore the burden of proof.

■ The government presented sufficient evidence to support the district court's finding. The investigative reports

submitted by the government showed that Oliveros–Orosco was present at his codefendant's apartment when the undercover agent entered. Oliveros–Orosco handed a box containing approximately $500,000 in counterfeit currency to the undercover agent to examine its contents. When the agent returned and Oliveros–Orosco was arrested, the defendant was holding a loaded handgun. The district court could properly discredit Oliveros–Orosco's proffer denying any involvement in the counterfeiting scheme. The court's acceptance of the proffer did not obligate the court to accept as true the testimony presented therein.

The decision of the district court is AFFIRMED.

*Smith*, —— U.S. ——, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990).