**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eddie BENNETT, Defendant–Appellant.**

**No. 92–1865.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 12, 1992.

Decided April 13, 1993.

Byron G. Cudmore, Asst. U.S. Atty. (argued), Springfield, IL, for plaintiff-appellee.

A. Michael Kopec (argued), Stratton, Dobbs & Nardulli, Springfield, IL, for defendant-appellant.

Before MANION and ROVNER, Circuit Judges, and REYNOLDS, Senior District Judge.*

MANION, Circuit Judge.

Eddie Bennett pleaded guilty to conspiring to distribute cocaine, and he entered into a plea agreement with the government. The agreement provided that Bennett and the government could recommend sentences to the district court and that Bennett was not a career offender. When preparing the presentence investigation report ("PIR"), the Probation Department located an additional violent felony conviction for Bennett, making him a career offender and causing a higher sentencing level than the one the plea agreement provided. On appeal, Bennett argues that the district court erred by sentencing him as a career offender, contrary to the plea agreement. He also contests the district court's compliance with Federal Rule of Criminal Procedure 11(e)(2). We affirm.

## I. Background

In September 1991, a grand jury indicted Bennett under 21 U.S.C. §§ 841(b)(1)(C), 846 with conspiracy to distribute cocaine. Bennett pleaded not guilty, but he later changed his plea to guilty and entered into a plea agreement with the government pur-

---

* Hon. John W. Reynolds, Senior District Judge for the Western District of Wisconsin, is sitting by designation.

suant to Federal Rule of Criminal Procedure 11. The plea agreement included: Bennett's promise of cooperation with law enforcement officials, the extent and value of which the government would present to the judge at sentencing; an agreement that both the government and Bennett could recommend a sentence each deemed appropriate, but the court would be bound by neither; a stipulation that Bennett was *not* a career offender under section 4B1.1 of the Sentencing Guidelines; and Bennett's acknowledgement that the plea agreement was completely voluntary, made with his full understanding of its contents.

At the change of plea hearing, the district court reviewed Bennett's plea agreement with him. The court advised Bennett that the plea agreement was a contract solely between himself and the government and that its terms did not obligate the court in any way. The court also informed Bennett that it would listen to the parties' recommendations regarding sentencing, but that it was not required to follow any of those recommendations. Bennett said he understood. The district court emphasized to Bennett that it could sentence him to the statutory maximum prison term of twenty years and impose the statutory maximum fine of one million dollars. The court also informed Bennett that it would be ordering Probation to prepare a PIR and it would use the PIR to determine Bennett's appropriate sentence, not exceeding the statutory maximum. Bennett said he understood and further stated that he did not have any questions about the punishment he would receive. He also assured the court that no one had guaranteed him any particular sentence.

The court then admonished Bennett to adhere to his promise in the plea agreement to cooperate fully with the government in its criminal investigations. The court informed Bennett that his complete cooperation was essential because he had so agreed and because only the government could request a downward departure sentence for his substantial assistance. The court also instructed Bennett that "under no circumstance are you going to be able to withdraw your plea of guilty here today." Bennett said he understood.

Bennett brought the career offender stipulation to the court's attention. The government stated that it was "agreeing that the defendant was not a career offender, *based upon the convictions that we know of.*" (Emphasis added.) After Bennett said he had no further questions about the plea agreement, the court found the agreement to be in proper form, accepted the agreement, and entered it into the record. The court ordered the preparation of the PIR.

In compiling the PIR, Probation discovered that Bennett had committed an additional violent felony, which the plea agreement failed to include. The additional offense categorized Bennett as a career offender. Based on his career offender status, Probation concluded that Bennett had an offense level of thirty-two and a criminal history category of six. Probation adjusted Bennett's Guidelines range pursuant to section 5G1.1(c)(1) of the Sentencing Guidelines to 210 to 240 months. The adjusted sentencing range was greater than the range set forth in the plea agreement, which was seventy-seven to ninety-six months, based on an offense level of twenty-four and a criminal history category of four.

Both the government and Bennett objected to the career offender finding in light of the stipulation in the plea agreement that Bennett was not a career offender. They claimed they were unaware of the additional conviction when they entered into the agreement. The government, however, conceded "that the stipulation in the Plea Agreement [was] not binding on the Court." In contrast, Bennett argued that he expected to be sentenced pursuant to his plea agreement and "that his expectation should be honored."

Bennett then moved the district court for leave to withdraw his guilty plea. Because he had entered into the plea agreement anticipating that he would not be sentenced as a career offender, Bennett argued that, owing to the greater sentence he would now receive, he did not knowingly and voluntarily plead guilty. The district court

denied Bennett's motion. The court found that Bennett admitted during his plea hearing that a factual basis for his guilty plea existed and that Bennett realized the court was not bound by the terms of the plea agreement.

At Bennett's sentencing hearing, the district court considered each party's objection to the PIR concerning Bennett's career offender status. Based on section 6B1.4(d) of the Sentencing Guidelines, the court concluded that it did not have to follow the stipulation in the plea agreement regarding Bennett's career offender status.[1] The court then accepted the sentencing recommendation in the PIR and set Bennett's offense level at thirty-two, his criminal history category at six, and his adjusted sentencing range at 210 to 240 months. The government moved the district court under section 5K1.1 of the Sentencing Guidelines to lower Bennett's sentence by thirty percent because he had provided the government with substantial assistance. The court granted the motion to depart downward and sentenced Bennett to 147 months in prison and five years of supervised release. This timely appeal followed.

## II. Analysis

Part of the dispute on appeal concerns the type of plea agreement the parties made. Bennett claims the government entered into an agreement for a specific sentence, while the government insists the agreement was no more than a nonbinding recommendation to the court. Federal Rule of Criminal Procedure 11(e)(1) provides for three types of plea agreements, which permit the attorney for the government to agree to

(A) move for dismissal of other charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.

Fed.R.Crim.P. 11(e)(1)(A)–(C).[2] In shorthand terms, these are referred to as type "A," "B," and "C" agreements. Once the parties enter into a plea agreement, the district court must require disclosure of the agreement in open court, if an in camera proceeding is not otherwise appropriate. *Id.* 11(e)(2).[3] If the plea agreement includes the dismissal of any charges, *id.* 11(e)(1)(A) (a type "A" plea agreement), or if the agreement includes a specific sentence, *id.* 11(e)(1)(C) (a type "C" plea agree-

---

1. According to section 6B1.4(d), "[t]he court is not bound by the stipulation [in a plea agreement], but may with the aid of the presentence report, determine the facts relevant to sentencing." United States Sentencing Commission, *Guidelines Manual*, § 6B1.4(d), p.s. (Nov.1991) ("U.S.S.G.").

2. Federal Rule of Criminal Procedure 11(e)(1) states:

(e) **Plea Agreement Procedure.**
(1) **In General.** The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:
(A) move for dismissal of other charges; or
(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.
The court shall not participate in any such discussions.

3. Federal Rule of Criminal Procedure 11(e)(2) provides:

(2) **Notice of Such Agreement.** If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(A) or (C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea.

ment), the district court may accept or reject the plea agreement, or it may defer its decision regarding acceptance or rejection until it considers the presentence investigation report. *Id.* 11(e)(2). In contrast, if the plea agreement includes sentencing recommendations or the government's promise not to oppose the defendant's sentencing requests, *id.* 11(e)(1)(B) (a type "B" plea agreement), the district court must advise the defendant of the nonbinding effect the recommendations have on the court and must also inform the defendant that he may not withdraw his guilty plea, even if the court does not adopt the recommendations. *Id.* 11(e)(2). The district court does not need to make such an admonition when dealing with a type "A" or "C" plea agreement. *Id.*

Pursuant to Rule 11(e)(3), if the district court accepts either a type "A" or "C" plea agreement, the court must inform the defendant that it will embody in the final judgment and the sentence the "disposition provided for" in the accepted plea agreement. *Id.* 11(e)(3).[4] The district court must fulfill the requirements of Rule 11(e)(3), because "critical to a type (A) or (C) agreement is that the defendant receive the contemplated charge dismissal or agreed-to sentence." *Id.* 11(e)(2), Advisory Committee Note to the 1979 Amendment. The acceptance provision of Rule 11(e)(3), however, does not apply when a district court is dealing with a type "B" plea agreement. "[T]here is no 'disposition provided for' in [a type "B"] plea agreement so as to make the acceptance provisions of subdivi-

sion (e)(3) applicable, nor is there a need for rejection with opportunity for withdrawal under subdivision (e)(4) in light of the fact that the defendant knew the nonbinding character of the recommendation or request."[5] *Id.; see also* 1 Charles A. Wright, *Federal Practice and Procedure* § 175.1, at 649 (1982) ("Since a Type B agreement contemplates a recommendation only, there is no 'disposition provided for' in it and thus nothing for the court to accept or reject with the consequences stated in subdivisions (e)(3) and (e)(4).").

### A. The Type of Plea Agreement

■ Bennett argues that his plea agreement, which did not specify its type, was a type "C" agreement. He maintains that once the district court accepted the plea agreement, Rule 11(e)(3) required the court to follow the stipulation that he was not a career offender. Bennett characterizes the stipulation as the government's promise under Rule 11(e)(1)(C) "that a specific sentence is the appropriate disposition of the case." Bennett asserts that he would have received a shorter sentence than the one imposed if the court had specifically enforced the stipulation in his plea agreement regarding his career offender status.

Bennett's plea was not a type "C" agreement. In his plea agreement, the government did not "agree that a specific sentence [was] the appropriate disposition of the case." Fed.R.Crim.P. 11(e)(1)(C). The agreements he and the government made in paragraph thirteen[6] of the plea agree-

---

**4.** Federal Rule of Criminal Procedure 11(e)(3) states:

> **(3) Acceptance of a Plea Agreement.** If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

**5.** Federal Rule of Criminal Procedure 11(e)(4) provides:

> **(4) Rejection of a Plea Agreement.** If the court rejects the plea agreement, the court shall, on the record, inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, afford the defendant the opportunity to then withdraw the plea, and ad-

vise the defendant that if the defendant persists in a guilty plea or plea of nolo contendere the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

**6.** Paragraph 13 of the plea agreement states:

> The defendant and the government stipulate and agree that the amount of cocaine attributable to the defendant at sentencing is at least 500 grams but less than two kilograms of cocaine, leading to an offense level 26 under the Guidelines. The defendant and the government agree that a two level reduction for acceptance of responsibility under 3E1.1 of the Guidelines also applies. *The defendant and the government both stipulate and agree that the defendant is not a career offender*

ment were agreements about the calculations of his sentence under the Guidelines, based in part on the number of offenses Bennett told the government he had committed. As Probation discovered, Bennett did not fully disclose his criminal history to the government during the plea negotiations.

Because full disclosure does not always occur during plea negotiations, the Sentencing Guidelines provide that stipulations between the government and a defendant do not obligate the district court. United States Sentencing Commission, *Guidelines Manual*, § 6B1.4(d), p.s. (Nov.1991). The commentary to section 6B1.4 states: "This provision requires that when a plea agreement includes a stipulation of fact, the stipulation must fully and accurately disclose all factors relevant to the determination of sentence." *Id.*, comment.[7] The commentary further provides:

> Section 6B1.4(d) makes clear that the court is not obliged to accept the stipulation of the parties. Even though stipulations are expected to be accurate and complete, the court cannot rely exclusively upon stipulations in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information.

*Id.* Because Probation discovered Bennett's additional violent felony conviction, which the plea agreement had omitted, the district court properly refused to accept the parties' stipulation regarding Bennett's career offender status. *Id.; see United*

States v. Easterling, 921 F.2d 1073, 1078–79 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2066, 114 L.Ed.2d 470 (1991); *United States v. Bennett*, 716 F.Supp. 1137, 1143 (N.D.Ind.1989), *aff'd*, 907 F.2d 152 (7th Cir.1990). The government noted as much in its objection to the PIR. Even though the government urged the district court to honor the stipulation, the government conceded that the stipulation did not bind the court.[8]

Rather than an agreement that a specific sentence should apply, the plea agreement contained only the government's promise that it and Bennett could recommend to the district court whatever sentence either deemed appropriate. The plea agreement also stated that the district court would not be required to adopt any of the parties' recommendations. Thus, the terms of the plea agreement track the language of Rule 11(e)(1)(B), which states that the government attorney may agree to "make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court." Fed.R.Crim.P. 11(e)(1)(B). In signing the agreement, Bennett acknowledged he was pleading guilty "with a full understanding of the contents of [the] written plea agreement...."

Moreover, during Bennett's plea hearing, the district court informed him several times that the plea agreement did not limit the court in its ability to sentence him. The court told Bennett it could sentence him to the maximum statutory term of twenty years in prison. The court also instructed Bennett that it would not determine his sentence until it reviewed the PIR.

---

*under 4B1.1 of the Guidelines.* The defendant and the government both stipulate and agree that the defendant does have two prior drug convictions that meet the definition of 4B1.2, but that those cases are related cases and are *not* counted separately under 4A1.1 of the Guidelines.

(Emphasis added.)

7. "The Guidelines commentary is an authoritative interpretive aid which explains how a specific guideline section 'is to be applied. Failure to follow such commentary could constitute an incorrect application of the guidelines, subject-

ing the sentence to possible reversal on appeal. *See* 18 U.S.C. § 3742.'" *United States v. Strozier*, 981 F.2d 281, 284 n. 5 (7th Cir.1992) (quoting U.S.S.G. § 1B1.7 (Nov.1991)).

8. We point out that even though the government wanted to stand by its stipulation with Bennett, it did not have to. *See United States v. Osborne*, 931 F.2d 1139, 1166 (7th Cir.1991) ("Where a defendant has failed to fully disclose his complete criminal history during plea agreement negotiations, the government is not required to be bound by an inaccurate recitation of the defendant's criminal history.").

Bennett said he understood the nonbinding nature of his plea agreement, and he also assured the court that no one had promised him any particular sentence. Accordingly, based on the language in the plea agreement and the colloquy between the court and Bennett, we conclude that Bennett and the government entered into a type "B" plea agreement, which did not limit the district court in any respect. *See United States v. Gonzalez–Mercado*, 808 F.2d 796, 800 n. 10 (11th Cir.1987) (noting that, unless the record displays otherwise, an appellate court must reasonably rely on the guilty plea colloquy and the signed plea agreement to show that the defendant understood the nonbinding nature of his plea).

■ At oral argument, Bennett's attorney maintained that the district court's acceptance of the plea agreement indicated that it was a type "C" agreement. A district court's mere acceptance of a plea agreement, however, does not convert it into a type "C." On the contrary, the terms of the plea agreement determine its type. In this case, Bennett entered into a type "B" plea agreement with the government. The district court's acceptance did not alter the type of the agreement. As such, the district court was not required, as it would have been with a type "C" plea agreement, to comply with Rule 11(e)(3) and embody the recommendations contained within the plea agreement into the final judgment and sentence. Fed. R.Crim.P. 11(e)(2), Advisory Committee Note to the 1979 Amendment; 1 Wright, *supra,* § 175.1, at 649; *see also United States v. Ellison*, 835 F.2d 687, 689 n. 4 (7th Cir.1987).

*B. The Admonition Requirement of Rule 11(e)(2)*

■ Bennett also contends that the district court failed to comply with the admonition requirement of Rule 11(e)(2). The Rule states in relevant part: "If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea." Fed.R.Crim.P. 11(e)(2). Bennett argues that the district court never told him he could not withdraw his guilty plea if the court refused to accept the parties' sentencing recommendations. Bennett asserts that the court's only admonishment regarding his inability to withdraw his plea came after the court had instructed him that he had to cooperate fully with the government, and if not, the court would prevent him from withdrawing his guilty plea. Bennett maintains, therefore, that the district court erred in not complying with Rule 11(e)(2).

Bennett is correct in stating that the court failed to track the language of Rule 11(e)(2). "As a rule, noncompliance with Rule 11 constitutes reversible error in this circuit. However, literal compliance is not necessary." *United States v. Peden*, 872 F.2d 1303, 1306 (7th Cir.1989); *accord United States v. Price*, 988 F.2d 706, 711 (7th Cir.1993). In reviewing Rule 11 proceedings for compliance, we do not give " 'Rule 11 such a crabbed interpretation that ceremony [is] exalted over substance.' " *United States v. Ray*, 828 F.2d 399, 404 (7th Cir.1987), *cert. denied*, 484 U.S. 1045, 108 S.Ct. 781, 98 L.Ed.2d 867 *and cert. denied*, 485 U.S. 964, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988) (quoting Fed. R.Crim.P. 11(h), Advisory Committee Note to the 1983 Amendment); *accord Price*, 988 F.2d 706, 711. "[T]he test for reversal on appeal is 'whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights.' " *United States v. DeCicco*, 899 F.2d 1531, 1534 (7th Cir.1990) (quoting *United States v. Frazier*, 705 F.2d 903, 907 (7th Cir.1983)); *accord Price*, 988 F.2d 706, 711.

As we have already concluded, the plea agreement was a type "B" agreement, and Bennett knew that neither the terms of the agreement nor the parties' sentencing recommendations would restrict the court's ability to sentence him. In addition, after the court stated to Bennett that he had to cooperate fully with the government, the court informed him that "under no circumstance" would it allow him to withdraw his guilty plea. Although the district court

failed to tell Bennett at the same point in the hearing that it was not required to follow the parties' sentencing recommendations and that Bennett could not withdraw his guilty plea if the court chose to ignore those recommendations, we find the court's admonition unambiguous: Bennett could not change his guilty plea for any reason; the admonition did not apply only if Bennett failed to cooperate with the government. Consequently, based on the total circumstances surrounding Bennett's plea, we hold that the district court properly informed him of his rights pursuant to Rule 11(e)(2).

### III. Conclusion

The district court did not err in declining to enforce the stipulations contained within Bennett's plea agreement. The agreement was a type "B" agreement under Rule 11(e)(1)(B) and did not bind the court. The district court also informed Bennett of his rights under Rule 11(e)(2), that is, the court told him it did not have to adopt the parties' sentencing recommendations and he could not withdraw his guilty plea under any circumstance. As a result, the district court is AFFIRMED.