53 F.3d 334
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee
v.
Tony LAMPKINS, Defendant-Appellant.
 No. 94-2520.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 26, 1995.
Decided May 1, 1995.
 
 Appeal from the United States District Court, for the Southern District of Illinois, Benton Division, No. 93 CR 40057; J. Phil Gilbert, Chief Judge.
 Before PELL, MANION and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Tony Lampkins was charged with transportation of a firearm and ammunition in interstate commerce in violation of 18 U.S.C. Sec. 922(g) and 924(a)(2) (Count I), possession of a firearm and ammunition in violation of 18 U.S.C. Secs. 922(g) and 924(a)(2) (Count II), and conspiracy to distribute crack cocaine in violation of 21 U.S.C. Secs. 841(a)(1) and 846 (Count III). Thereafter, Lampkins and the government entered into a plea agreement whereby Lampkins agreed to plead guilty to Count I and the government agreed to dismiss Counts II and III. The district court sentenced Lampkins to a 120 month term of imprisonment to be followed by a three year term of supervised release. Lampkins' counsel filed a timely notice of appeal. On appeal, Lampkins' counsel also filed a motion to withdraw and an Anders brief in which he stated his belief that an appeal would be frivolous. Anders v. California, 386 U.S. 738 (1967); United States v. Edwards, 777 F.2d 364 (7th Cir.1985). Pursuant to Circuit Rule 51(a), Lampkins was informed of his right to respond; he did not.[1] We will grant the motion to withdraw only if we are convinced that the possible issues for appeal are "groundless in light of legal principles and decisions." United States v. Eggen, 984 F.2d 848, 850 (7th Cir.1993) (citing McCoy v. Court of Appeals, 486 U.S. 429, 436 (1988)). Our independent review of the record reveals that there are no issues for appeal that can be considered non-frivolous.
 
 I. Issues Concerning the Plea Agreement
 
 2
 Lampkins' counsel raises the issue of whether the plea agreement was entered into knowingly and voluntarily. Having independently reviewed the transcript of the plea hearing, we conclude that any challenge to the voluntariness of the guilty plea would be groundless and therefore frivolous.
 
 
 3
 The plea hearing must be examined to determine whether Lampkins' guilty plea satisfied the requirements of Fed.R.Crim.P. 11. The district court conducted a colloquy with Lampkins and accepted his guilty plea. The district court first warned Lampkins that if he gave any false answers at the guilty plea hearing, his false answers could later be used against him in another prosecution for perjury. (Plea Tr. at 2.) The district court established that Lampkins was competent. (Plea Tr. at 3.) The district court then asked Lampkins if he had read, understood, and signed the agreement. Lampkins said he did. (Plea Tr. at 4.) The government, at the direction of the district court, then set forth the terms of the plea agreement. (Plea Tr. at 4-5). The district court ensured that Lampkins agreed that these were the terms of the plea agreement. (Plea Tr. at 6.) Then, the district court ensured that Lampkins' choice to plead guilty to Count I was voluntary. (Plea Tr. at 6, 12-13.) Lampkins stated that he understood the nature of the charge he was pleading guilty to (carrying a loaded gun accross state lines), (Plea Tr. at 7), and that the maximum possible sentence was ten years' imprisonment, a $250,000 fine, and three years of supervised release. (Plea Tr. at 7-8.) The district court informed Lampkins that it would have to follow the sentencing guidelines in sentencing him, (Plea Tr. at 8), and that under certain circumstances it could impose a sentence which might be greater or lesser than that called for in the guidelines. (Plea Tr. at 8-9.) Lampkins was informed that he had a right to plead not guilty, that he had a right to a trial by jury, that he had a right to assistance of counsel, that he had a right to confront his accusers and to bring in witnesses to testify on his own behalf, and that he had a right against self-incrimination. (Plea Tr. at 9.) Lampkins was then told that if he pleaded guilty, he was giving up all of the rights explained to him. (Plea Tr. at 12.)
 
 
 4
 Counsel notes, however, that despite this colloquy, Lampkins might argue that since the government failed to recite the complete factual basis for the plea at the hearing, the guilty plea should be withdrawn. The government's counsel recited the following stipulation of facts at sentencing. On August 19, 1993, Lampkins was a passenger in a vehicle which was stopped by a Federal Public Housing Drug Task Information Officer in Cairo, Illinois. A .22 calibur handgun which was fully loaded was found under the passenger's side of the front seat. Lampkins admitted that he had been in possession of the fully loaded gun and, when the vehicle was stopped, he hid it under the front seat. However, before the government was able to establish that Lampkins had transported the firearm across state lines (from Cairo, Illinois to Charleston, Missouri and back), the district court told the government that its recitation of the factual basis for the crime was sufficient. (Plea Tr. at 10-12.)
 
 
 5
 Rule 11(f) provides that before accepting a guilty plea, the district court must be satisfied that there is a factual basis for the plea. Here, the factual basis recited by the government at sentencing was not complete--it did not establish that the firearm was transported accross state lines. Nonetheless, we agree with counsel that this infirmity does not invalidate the guilty plea and that any appeal on this basis would be groundless. While an oral proffer by the government and response by the defendant at the plea hearing might be helpful, it is not necessary to establish a proper factual basis. It is well-settled that "[a] judge may find the factual basis from anything that appears in the record...." United States v. Musa, 946 F.2d 1297, 1302 (7th Cir.1991) (citing United States v. Lumpkins, 845 F.2d 1444, 1450 (7th Cir.1988)); see also United States v. Robinson, 14 F.3d 1200, 1207 (7th Cir.1994). The record demonstrates that as part of his plea agreement, Lampkins signed a stipulation of facts wherein he admitted to carrying the firearm across the Illinois-Missouri border in an attempt to sell it. At the plea hearing, Lampkins was asked whether he read and signed the stipulation of facts. Lampkins stated that he did. (Plea Tr. at 4.) Clearly, there was a sufficient factual basis for the guilty plea.
 
 
 6
 Lampkins might also argue that his guilty plea should be withdrawn because the district court did not specifically advise Lampkins under Rule 11(e)(2) that he had no right to withdraw his guilty plea, even if the district court did not accept the government's sentencing recommendation. Rule 11(e)(2) reads, in pertinent part, that "[i]f the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request [for a particular sentence] the defendant nevertheless has no right to withdraw the plea." Fed.R.Crim.P. 11(e)(2). A plea agreement is of the type specified in subdivision (e)(1)(B) when the government agrees to "make a recommendation, or agree[s] not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding on the court." Fed.R.Crim.P. 11(e)(1)(B). Since, as part of Lampkins' plea agreement, the government agreed to recommend a sentence in the lower part of the guidelines range, but provided that this recommendation is not binding on the district court, the plea agreement is of the type specified under Rule 11(e)(1)(B). Hence, the admonition required by Rule 11(e)(2) is applicable to Lampkins.
 
 
 7
 The purpose of Rule 11(e)(2) is to assure "that the accused's decision to plead guilty is fully informed by disabusing the defendant of any mistaken notions he may have obtained during the plea bargaining process." United States v. Diaz-Vargas, 35 F.3d 1221, 1224 (7th Cir.1994). "As a rule, noncompliance with Rule 11 constitutes reversible error in this circuit." United States v. Bennett, 990 F.2d 998, 1004 (7th Cir.1993) (quoting United States v. Peden, 872 F.2d 1303, 1306 (7th Cir.1989)). However, Rule 11 provides a harmless error exception: "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 11(h). In determining whether a failure to comply with Rule 11(e)(2) constitutes harmless error, we must ascertain how the government's agreement to recommend a lesser sentence "would have likely affected his decision to adopt or reject a plea, and what additional information a special Rule 11(e)(2) admonition would have added to the defendant's knowledge." Diaz-Vargas, 35 F.3d at 1222. Here, the failure to provide a specific Rule 11(e)(2) admonition was harmless error. At the plea hearing, Lampkins was asked if he understood that the district court would have to follow the sentencing guidelines and that even if the sentence received was more severe than he would expect, he would still be bound by his guilty plea. (Plea Tr. at 8-9.) Lampkins stated that he understood. Since Lampkins understood that his guilty plea could not be withdrawn, it was harmless error for the district court to fail to give him a Rule 11(e)(2) warning. Accordingly, this claim would be without merit and frivolous.
 
 
 8
 Since the district court sentenced Lampkins to the highest possible sentence within his guideline range, Lampkins might argue that the government breached the plea agreement. See Carnine v. United States, 974 F.2d 924, 932 (7th Cir.1992). However, since the government agreed only to recommend that the district court sentence Lampkins at the lower end of his applicable guideline range, and at sentencing, the government made this recommendation, (Sentencing Tr. at 6), there was no breach. Hence, this claim would be frivolous.
 
 
 9
 Counsel points out that another possible basis for challenging Lampkins' guilty plea might be the fact that although the plea agreement indicated that his criminal history category was V, the PSR listed it as VI.[2] Such a claim, however, would be without merit. Lampkins' guilty plea clearly indicated that the calculation presented in the guilty plea agreement was not binding on the court and that the final calculation would be based on the PSR. In addition, the plea agreement indicated that regardless of the criminal history category found by the court, Lampkins would not be able to withdraw his guilty plea. At the guilty plea colloquy, the district court ensured that Lampkins understood and agreed to the terms of the plea agreement and warned him that if the sentence was more severe than expected, he would still be bound by the plea agreement. (Plea Tr. at 9.) In any event, since Lampkins was sentenced to the statutory maximum of 120 months, and this sentence would have been within Lampkins' guideline range even if he had been sentenced with a criminal history category of V (100 to 125 months' imprisonment), the fact that Lampkins received a criminal history category of VI rather than V is inconsequential.
 
 II. Sentencing Issues
 
 10
 Appellate review of a sentence imposed under the guidelines is limited to cases where the sentence is (1) in violation of the law, (2) a result of the incorrect application of the guidelines, (3) greater than the sentence specified in the applicable guideline range, or (4) plainly unreasonable and imposed for an offense for which there is no guideline. 18 U.S.C. Sec. 3742(a)(1)-(4). Hence, "[a]bsent an error of law or a misapplication of the guidelines, this court lacks jurisdiction to review sentences within the appropriate guidelines range." United States v. Solis, 923 F.2d 548, 551 (7th Cir.1991). To establish whether Lampkins' sentence meets any of the criteria of review, we must first decide whether he was sentenced in compliance with the United States Sentencing Guidelines.
 
 A. Application of the Sentencing Guidelines
 
 11
 Our independent review reveals that the guidelines were correctly applied to Lampkins' case. Lampkins pleaded guilty to possession of a loaded firearm transported accross state lines in violation of 18 U.S.C. Sec. 922(g). Pursuant to U.S.S.G. Sec. 2K2.1, the base offense level for this offense is 24 points. Because Lampkins possessed the firearm in connection with another felony offense, purchasing drugs, the offense level was increased by four points. U.S.S.G. Sec. 2K2.1(b)(5). As a result of Lampkins' acceptance of responsibility, he received a three point reduction pursuant to U.S.S.G. Sec. 3E1.1(b). His total offense level was therefore 25 points. We find no possible error in these findings. The PSR calculated Lampkins' criminal history points to be 10. Because Lampkins committed the offense while on probation for three separate cases, two points were added to his criminal history score pursuant to U.S.S.G. Sec. 4A1.1(d). In addition, since the offense was committed less than two years after release on a sentence counted under U.S.S.G. Sec. 4A1.1(b), an additional point was added to his criminal history score, U.S.S.G. Sec. 4A1.1(e), resulting in a total criminal history score of 13 thereby establishing a criminal history category of VI.
 
 
 12
 Based on a total offense level of 25 and a criminal history category of VI, the guideline range for imprisonment was 110 to 137 months. Since the statutory maximum is 120 months, the effective range of sentencing was 110 to 120 months. Lampkins was sentenced within the range with a term of 120 months' imprisonment.
 
 
 13
 Counsel points out that Lampkins might object to the district court's sentencing him at the higher end of the applicable guidelines range, arguing that some of the reasons given by the court (past criminal history and commission of an offense while on parole) were already considered when the criminal history category was calculated. This claim would be groundless. The district court stated that it opted for the higher end of the range because Lampkins had demonstrated a failure to mend his ways. (Sentencing Tr. at 8.) Such a consideration at sentencing is clearly appropriate. See 18 U.S.C. Secs. 3553(a)(2)(A), (a)(2)(B), and (a)(2)(C). In addition, 18 U.S.C. Sec. 3553(a)(1) allows the district court to consider the nature and circumstances of the offense and the history and characteristics of the defendant.
 
 
 14
 Our independent review reveals that the guidelines were correctly applied in Lampkins' case. Hence, his sentence does not meet any of the criteria for review, and an appeal would be groundless.
 
 B. Compliance with Rule 32
 
 15
 We must also determine whether Lampkins was sentenced in compliance with Fed.R.Crim.P. 32. Rule 32(a) requires that the court timely provide the defendant with a copy of the presentence report and afford counsel an opportunity to state objections to the report and comment on matters relating to the sentence. Lampkins' counsel received the presentence report prior to the sentencing hearing. (Sentencing Tr. at 2.) Counsel did not object to any of the factual findings contained in the report. (Sentencing Tr. at 5.) The court addressed Lampkins personally and allowed him to add any comments. (Sentencing Tr. at 5.) Fed.R.Crim.P. 32(a)(1)(C). Finally, Lampkins was advised of his right to appeal his sentence. (Sentencing Tr. at 9.)
 
 
 16
 Counsel points out that Lampkins might object to the manner in which he was advised of a revision of the presentence report on the morning of sentencing. However, this revision corrected a mathematical error which did not affect his sentence--that his criminal history score of thirteen translated to a criminal history category of VI and not V. Although Lampkins did not read the change until the morning of sentencing, counsel had received the change before sentencing and explained it to Lampkins. In addition, Lampkins was given an opportunity to read the changes at sentencing and the district court ensured that he understood the nature of the change. (Sentencing Tr. at 3-4.) Clearly, such a claim would be frivolous.
 
 
 17
 Accordingly, counsel's motion to withdraw is GRANTED and Lampkins' appeal is DISMISSED.
 
 
 
 [1]
 Lampkins requested an extension of time to file a response on October 24, 1994. On October 25, 1994 we granted this motion indicating that a response was due November 25, 1994. However, Lampkins has not responded or otherwise requested a further extension of time to file a response
 
 
 [2]
 Lampkins' criminal history category increased because an additional prior conviction was discovered during the presentence investigation