119 F.3d 8
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Randall Elsworth MORELAND, Defendant-Appellant.
 No. 96-30164.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 8, 1997
Decided July 21, 1997.
 
 1
 Appeal from the District Court for the District of Idaho, CR-95-93-01-BLW; B. Lynn Winmill, District Judge, Presiding.
 
 
 2
 Before: REINHARDT and THOMAS, Circuit Judges, and SEDWICK,** District Judge.
 
 
 3
 MEMORANDUM*
 
 
 4
 Randall Moreland appeals his sentence imposed following his guilty plea to manufacturing methamphetamine (21 U.S.C. § 841(a)(1)), possession with intent to distribute methamphetamine (21 U.S.C. § 841(a)(1)), and possession of a firearm by a felon (18 U.S.C. § 922(g)(1)). Moreland was sentenced to 180 months in prison, a $1,900 fine, and 6 years on supervised release. Moreland argues: 1) the district court improperly sentenced him at the high end of the guideline range; 2) his plea agreement should be set aside because he was not advised he could be treated as a career offender; 3) the district court did not recognize its discretion to depart downward; 4) he was not competent to plead guilty; and 5) the district court improperly failed to determine whether the charged narcotic was 1- or d-methamphetamine.
 
 I. Background
 
 5
 On May 24, 1995, a Bureau of Narcotic Enforcement case agent received two reports of a methamphetamine laboratory in Blackfoot, Idaho. The first identified an "Andy Moore" who purchased precursor chemicals; the second identified a "Randy" who sold methamphetamine to an arrestee from a vehicle owned by Claudia White. Upon confiscating garbage at White's residence, agents discovered suspicious laboratory related items and receipts for purchases of precursor chemicals by Moreland and "Andy Moore."
 
 
 6
 Executing a warrant to search the residence of White and Moreland, agents discovered a methamphetamine laboratory and arrested White and Moreland without incident. Moreland informed agents that he had a .45 caliber handgun in his dresser, and that as a convicted felon he knew he should not have the weapon. Moreland identified methamphetamine and laboratory equipment for its manufacture. Agents discovered a booby trap device consisting of a rat trap and a 12 gauge shotgun shell.
 
 
 7
 Moreland told agents how he learned to manufacture methamphetamine, used White to procure the ingredients, and then sold his product. White admitted to purchasing the precursor chemicals. White stated that she knew of the laboratory and occasionally smoked methamphetamine with Moreland. Agents discovered methamphetamine at various levels of purity in the laboratory at the residence.
 
 
 8
 A four-count indictment charged Moreland and co-defendant White with manufacturing and possessing methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), using and/or carrying a firearm during a drug crime, and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(c). On December 1, 1995, Moreland pled guilty to three counts: manufacturing methamphetamine; possessing methamphetamine with intent to distribute; and being a felon in possession of a gun.
 
 II. Sentence Within Applicable Range
 
 9
 A sentence within the applicable range must have been imposed in violation of law for this court to review the district court's sentence. 18 U.S.C. § 3742(a)(1); United States v. Khaton, 40 F.3d 309, 311 (9th Cir.1994). Here, based on an offense level of 29 and a criminal history category of VI, Moreland's guideline imprisonment range was 151 to 188 months' imprisonment. Moreland does not argue that the district court imposed the sentence "in violation of law." The district court's decision to sentence Moreland within the guideline range cannot be reviewed by this court.
 
 III. Plea Agreement
 
 10
 Moreland contends that his plea agreement should be set aside because the court did not advise him that he could be treated as a career offender. When construing a plea agreement the court looks to a defendant's reasonable understanding of the terms of the plea agreement when he entered the plea. United States v. Serrano, 938 F.2d 1058, 1061 (9th Cir.1991). A guilty plea must be knowing, voluntary, and intelligent. Brady v. United States, 397 U.S. 742, 747 (1970). A district court must advise a defendant of the "mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law." Fed.R.Crim.P. 11(c)(1); Brady, 379 U.S. at 748-49. There is no requirement that before entering a plea the defendant be informed of the applicable offense level or criminal history category under the Sentencing Guidelines. United States v. Turner, 881 F.2d 684, 687 (9th Cir.), cert. denied, 493 U.S. 871 (1989).
 
 
 11
 Here, the plea agreement specifically informed Moreland that the maximum possible penalty of life imprisonment and/or a $4,000,000 fine for Counts 1, 2, and 4 could be imposed. The plea agreement also stated the mandatory minimum statutory penalties which were applicable to Counts 1 and 2. At the change of plea hearing on December 1, 1995, the court again informed Moreland that for the purposes of the plea he should "assume the worst case scenario, which is that it could be thirty years." The court went on to inform Moreland of both the statutory maximum and minimum penalties. The court also instructed Moreland that under the Sentencing Guidelines, if he had a prior criminal conviction, it might serve to increase his sentence. Under Fed.R.Crim.P. 11, the court had no duty to inform Moreland that he might be classified as a career offender. See Fed.R.Crim.P. 11(c); United States v. Oliveros-Orosco, 942 F.2d 644, 646 (9th Cir.1991) (defendant may not withdraw guilty plea even though neither defense nor prosecution contemplated that he would be sentenced as a career offender).
 
 IV. Downward Departure
 
 12
 Moreland argues he was entitled to a downward departure from the applicable Guideline range for diminished capacity pursuant to U.S.S.G. § 5K2.13 based upon his low level of intelligence and sexually abused childhood.
 
 
 13
 A district court's discretionary refusal to depart from the Sentencing Guidelines is not reviewable on appeal as long as the court in fact exercised its discretion. United States v. Robinson, 958 F.2d 268, 272 (9th Cir.1992). Here, the district court concluded:
 
 
 14
 Counsel, before I pronounce sentence, let me indicate how I intend to deal with the request for upward and downward departure.
 
 
 15
 Frankly, there are probable circumstances here from which the Court could either grant an upward or a downward departure.
 
 
 16
 .. there does appear to be evidence that the defendant was victim of sexual abuse as a child and that he does have reduced mental capacity. Either of those could, under some circumstances, provide a basis for downward departure.
 
 
 17
 However, the Ninth Circuit case law indicates that the sex abuse must be extraordinary in order to warrant departure. And perhaps it's a function of my having been a judge now for in excess of eight years, one begins to wonder whether sex abuse is not becoming very ordinary, unfortunately. And what I heard and what I saw in the presentence report was simply not so extraordinary that it would justify a downward departure.
 
 
 18
 Likewise, the Court feels the reduced mental capacity--and perhaps part of the problem is that I had the opportunity to listen to the defendant's comments here. Although I think he clearly has some problems, it does strike me that he does have the ability to and the mental capacity necessary to conform his behavior to what the law requires.
 
 
 19
 And based thereon, I think the reduced mental capacity is something the Court will consider in setting the sentence within the guideline range. I don't feel it is so significant that it would justify a downward departure.
 
 
 20
 Because the district court was aware of its discretion to depart downward but declined to do so, we are without jurisdiction to review its refusal to depart.
 
 V. Mental Competency
 
 21
 For the first time, Moreland alleges on appeal that his low intelligence and bipolar affective disorder rendered him incompetent to plead guilty. When a defendant raises an issue on appeal not raised before the district court, the court of appeals may review for plain error. See Fed.R.Crim.P. 52(b).
 
 
 22
 At the plea hearing, Moreland stated that he was thirty-three years old and had completed the eleventh grade. He denied suffering from any mental illness, disease or disorder. In his own words he told the court what he understood the proceedings to be. Moreland's attorney confirmed that Moreland was competent. Moreland testified that the sleeping pill he had taken the night before in no way affected his thought process. After questioning Moreland, the court found him competent in the proceeding and competent to enter a plea. We agree that on the basis of the record before us Moreland was competent to enter a plea agreement.
 
 VI. Offense Level Computations
 
 23
 Moreland contends that to avoid ex post facto issues the Sentencing Guidelines in effect at the time of his offense should have been used. In a nutshell his argument is that the Sentencing Guidelines in effect at the time he committed the crime provided significantly lower sentences for 1-methamphetamine, and that there was no proof he manufactured or possessed d-methamphetamine. His argument might have merit if his sentence range had been determined by the guidelines for drug offenses. It was not.
 
 
 24
 Moreland pled guilty to Counts 1, 2, and 4 of the indictment. The presentence report grouped Counts 1, 2--the drug counts--and 4--the felon in possession count--because Counts 1 and 2 embodied conduct treated as specific offense characteristics relating to the guideline applicable to Count 4. U.S.S.G. § 3D1.2(c). The exact conduct that was treated as a specific offense characteristic involved committing another felony offense (the drug counts) while in possession of a firearm. Pursuant to U.S.S.G. § 3D1.3(a), the district court determined the offense level for the group by determining the highest offense level of the counts in the group. Utilizing U.S.S.G. § 2K2.1 ("Unlawful Receipt, Possession or Transportation of Firearms or Ammunition: Prohibited Transactions Involving Firearms or Ammunition") resulted in a higher offense level than grouping the counts under the drug guideline (U.S.S.G. § 2D1.1). Therefore, because the guidelines for the drug charge are not used to calculate Moreland's base offense level, there were no ex post facto issues.
 
 VII. Conclusion
 
 25
 The judgment of the district court is AFFIRMED.
 
 
 
 **
 The Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3